[Crim. No. 8288. Fourth Dist., Div. One. Nov. 1, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN HULDERMAN, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and J. Perry Langford for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COUGHLIN, J.,*—By an information defendant was charged with entering the residence and building occupied by Georgia Ellen Pettit with intent to commit petty larceny, a violation of Penal Code section 459, which was amended to charge he entered a residence and trailer coach; was convicted; and appeals.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

On appeal defendant contends: (1) the trial court erred prejudicially in failing to instruct *sua sponte* on a lesser-included offense; (2) the court erred prejudicially in instructing the jury the defendant had offered alibi evidence; (3) the judgment should be set aside because it was not reported by a qualified court reporter; and (4) the defendant was arraigned, tried, and convicted of a charge not supported by the evidence.

On September 14, 1975, during the noon hour, Mrs. Pettit was napping in her trailer coach; heard someone knock at the back door about three times; heard the door open, someone enter, and the rattle of her keys which were attached to her purse; raised up, and observed defendant holding her purse. Mrs. Pettit asked, "What's going on?" Defendant responded "Ellen"; set down the purse; and walked out the back door. Mrs. Pettit jumped up; went out after him; saw him "walking along the fence" toward a gate; went out a different gate along a driveway to a road and saw a gray car with a black man in the driver's seat; and also saw defendant get into the car, which immediately was driven off. She was standing next to the car when it was driven away and was unable to "have any conversation" with the occupants.

Mrs. Pettit had known defendant for five or six years as a customer at different places, where she had worked as a bartender. She and her husband had loaned him money before this occasion, $3 to $5 at a time, and had been repaid.

At 11 a.m. of the same day, Officer Miner of the Brawley Police Department had stopped a man named Tom Jones in his black-over-gray Oldsmobile automobile and cited him for a traffic violation. Defendant was a passenger in the car.

Following his arrest and advisement of his rights defendant was questioned by the police; stated he had been with Tom Jones in a red Camaro automobile most of the day; had no knowledge of Jones' owning a gray automobile; and he had not been at Mrs. Pettit's residence.

At trial, defendant testified he, Tom Jones and Joe Fernandez had gone to the Pettit residence in Jones' black and gray car in order to borrow money; he knocked at the back door several times; received no answer; and left without entering. He also testified Mrs. Pettit never came out of the house while they were there. Defendant did not recall

telling the police he had not been at the Pettit residence on the day in question, or had been riding around in the red Camaro.

■ Defendant contends the trial court erred in failing to instruct *sua sponte* on the claimed lesser-included offense of entering a non-commercial dwelling house, apartment or other such place without the consent of the owner, his agent or the person in lawful possession thereof, in violation of Penal Code section 602.5, citing *People* v. *Sedeno,* 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], in support of this contention.

Defendant was charged with burglary in that he "did wilfully and unlawfully enter a residence and trailer coach . . . occupied by Georgia Ellen Pettit . . . with the intent to commit larceny." The information does not charge defendant entered the coach without consent of the owner, his agent, or the person in lawful possession thereof. However, defendant contends "in order for a burglary to occur, the entry must be without consent" citing *People* v. *Gauze,* 15 Cal.3d 709, 713 [125 Cal.Rptr. 773, 542 P.2d 1365], in support thereof. The entry in *Gauze* was into an apartment occupied jointly by the defendant and another person and, for this reason, the cited case is inapposite to the case at bench.

Evidence establishing a defendant entered a dwelling with the intent to commit larceny supports an inference he entered without consent. Ordinarily the occupant of a dwelling does not consent to its entry by another for the purpose of committing larceny therein. In the case at bench the evidence establishes defendant entered the trailer coach with intent to commit larceny and supports the inference he entered without consent. Other than the inference thus raised there is no evidence defendant entered the trailer without the consent of the owner, his agent or the occupant. In the event the jury did not accept the evidence establishing defendant's entry was with intent to commit larceny as proof of his intent, there is no evidence he was in the trailer without consent. Thus, under the evidence the defendant was guilty of burglary as charged or was not guilty of any offense. Under these circumstances the failure to give an instruction on the alleged lesser-included offense of unlawful entry was not error (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 717).

■ Defendant also contends the court committed prejudicial error in giving the following instruction: "The defendant in this case .has

introduced evidence tending to show he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If after a consideration of all the evidence you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal."

Defendant testified he was at the Pettit residence on the day in question but he did not enter the dwelling. He produced two witnesses, i.e., Jones and Fernandez, whom he said accompanied him, corroborating this testimony. Defendant argues the instruction, in effect, told the jurors he had offered evidence he was elsewhere at the time of the alleged burglary which was tantamount to telling them he "had lied about his presence at the scene of the crime." However, defendant testified he was at the Pettit residence during the noon hour of the day in question and his witness Fernandez testified defendant and Jones picked him up around noon and that they were at the Pettit residence on the afternoon of the day in question. The testimony of the defendant and his witness was evidence tending to show defendant was not present at the time and place of the alleged offense, i.e., during the noon hour of the day in question, but was riding around in an automobile with his friends during that time.

Defendant also argues the purported alibi evidence was attributed to him by prosecution witnesses who testified he told Officers Prince and Abubo he had not been present at Mrs. Pettit's residence on the day in question; in response to an inquiry whether he recalled telling Prince he had been to the Pettit residence on that day, testified he had not; and the effect of the instruction was to take from the jury the possible inference he had not made the alibi statement, and to impeach his credibility in the eyes of the jury. There is no inference defendant had not made the statement to Prince. The only effect of his testimony was that he did not recall making the statement. The instruction did not tell the jury he had made the statement to Prince.

Furthermore, any error in giving the instruction was not prejudicial. It is not reasonably probable the instruction had the effect on the jury the defendant argues it did have. The instruction was directed to evidence the defendant had introduced. At the most it told the jury this evidence tended to show he was not present at the Pettit residence at the time the alleged crime was committed. In addition, the primary thrust of the instruction was to tell the jurors if, after considering all of the evidence,

they had a reasonable doubt the defendant was present at the time the offense was committed they should acquit him. After an examination of the entire cause, including the evidence, we are of the opinion it is not reasonably probable a result more favorable to the defendant would have occurred if the instruction had not been given. Under these circumstances the claimed error does not justify a reversal (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]).

 Defendant also contends the judgment should be set aside because the oral proceedings at the time of pronouncement of judgment were not reported by an official court reporter.[1]

Assuming, for the purpose of argument only, the reporter reporting the proceedings at the time of pronouncement of judgment was not an official court reporter or otherwise authorized to report the proceedings, we conclude these facts do not require a reversal.

 Whether a court reporter is a duly appointed official court reporter or is authorized to report the oral proceedings at the time of pronouncement of judgment is not jurisdictional and if it is error to conduct the proceedings without such a reporter[2] the error, per se, is not prejudicial error. (*People* v. *Brown,* 207 Cal. 172, 177-178 [277 P. 320].) The manner in which the oral proceedings at a trial are reported, per se, does not deny a defendant his right to appeal from the judgment and to obtain a review of claimed errors in the proceedings. A reporter's transcript of the proceedings pursuant to California Rules of Court, rules 4 and 35, is not the only type of record thereof acceptable on appeal (*Muller* v. *Municipal Court,* 259 Cal.App.2d 177, 179 [66 Cal.Rptr. 367]). In this particular an appeal from a judgment in a criminal case is materially different from an appeal from a judgment in a juvenile court case, which was the situation in *In re David T.,* 55 Cal.App.3d 798 [127 Cal.Rptr. 729], cited by defendant in support of his position. A settled statement, formerly called a bill of exceptions, is an alternative type of record of the oral proceedings which, under the assumed

---

[1]The prerequisites to appointment of an official court reporter are prescribed by Government Code sections 69942 and 70044.

[2]Government Code sections 69941 and 70043 authorize the appointment of official court reporters by judges of the superior court but do not expressly require their appointment. Likewise Code of Civil Procedure section 269 prescribes the reporting duties of an official court reporter acting upon order of the court to report particular proceedings, and under other stated circumstances, but does not expressly require the court to order the proceedings reported (cf., Pen. Code, § 869; *People* v. *Williams,* 129 Cal.App. 504 [19 P.2d 37]).

circumstances in this case, might be used on appeal (Cal. Rules of Court, rules 7, 36(b); *Sweet* v. *Markwart,* 115 Cal.App.2d 735, 742 [252 P.2d 751]). Similarly, the type of record known as an agreed statement will suffice (Cal. Rules of Court, rules 6, 36(a)). The rationale of the decision in *People* v. *Chessman,* 35 Cal. 2d 455, 460 [218 P.2d 769, 19 A.L.R.2d 1084], applies.[3] (See also *Muller* v. *Municipal Court, supra,* 259 Cal.App.2d 177, 179.) Defendant had a method of preparing a record of the proceedings in the pronouncement of judgment if he chose to do so, which would have enabled this court to review any claimed errors he wished to assert.

Furthermore, defendant does not suggest the judgment entered in the minutes of the court does not correctly record the judgment orally pronounced by the court. No action was taken in the trial court to correct any claimed errors in its minutes, which could have been taken if there were such errors (*People* v. *Hartsell,* 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627]). Under these circumstances we must assume the minutes correctly record the judgment and the record on appeal is adequate to afford defendant a review of any claimed errors in its pronouncement (see *People* v. *Brown, supra,* 207 Cal. 172, 177-178).

■ Defendant's contention the evidence is insufficient to support a conviction of the burglary alleged in the amended information is premised upon the contention Mrs. Pettit's dwelling was not a trailer coach but a building. The jury was given the following instruction defining a trailer coach: "A 'trailer coach' is a vehicle without motive [*sic*] power designed for human habitation and for carrying persons and property on its own structure and for being drawn by a motor vehicle."

With respect to the nature of the dwelling she occupied Mrs. Pettit testified: "Q. What sort of structure do you live in? A. A mobile home. Q. That mobile home, is it powered by anything? A. No, it is permanent. Q. Do you have to have some vehicle haul it? A. Yes."

This testimony as well as testimony by one of the defendant's witnesses describing the dwelling as a "trailer" and similar references

---

[3]In *People* v. *Chessman,* 35 Cal.2d 455, 460 [218 P.2d 769, 19 A.L.R.2d 1084], the court said: "If a record can be 'prepared in such a manner as to enable the court to pass upon the questions sought to be raised' (3 Am. Jur. 212), then there is no rational likelihood or legally cognizable possibility of injustice to the appealing defendant even though a verbatim record certified by the official court reporter cannot be supplied."

thereto by the parties throughout the trial, support a finding the dwelling was a trailer coach.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied November 9, 1976, the opinion was modified to read as printed above on November 30, 1976. Appellant's petition for a hearing by the Supreme Court was denied December 29, 1976,